**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EDWARD NEWMAN,

        *Plaintiff*,

*v.*

GREG HISSONG, and
MICHIGAN DEPARTMENT
OF CORRECTIONS,

        *Defendants*.
_____/

CASE NO. 19-cv-11751

DISTRICT JUDGE STEPHANIE DAVIS
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
PARTIAL DISMISSAL AND FOR SUMMARY JUDGMENT ON THE BASIS OF
EXHAUSTION (ECF. No. 17)**

### I.    RECOMMENDATION

For the reasons stated below, I recommend that the Court **GRANT** the motion (ECF No. 17) and dismiss all claims against Defendant Hissong under § 1983 for Plaintiff's failure to exhaust (Counts 1 and 2), dismiss Count 2 (failure to act under § 1983), dismiss the ADA and RA claims against Defendant Hissong, and dismiss any official capacity claims against Defendant Hissong and the MDOC under § 1983. If this Report is adopted, the only remaining claims would be Counts 3 and 4 (ADA and RA) against Defendant MDOC only.

### II.    REPORT

#### A.    Facts and Procedural History

1

Plaintiff Edward Newman filed a *pro se* complaint in this court on June 11, 2019. (ECF No. 1.) Plaintiff sued Defendant Hissong in his official and individual capacities. (ECF No. 1, PageID.1.) Plaintiff complains that he was unlawfully terminated from his work assignment as a "semi-skilled" "'160-Napkin Roller FS-0006'" even though "Defendants actually knew about plaintiff's permanent disability prior to hiring him[.]" (ECF No. 1, PageID.3.) Plaintiff is under a "'no standing' medical detail requiring him not to stand while performing his work assignment." (ECF No. 1, PageID.4.) Plaintiff's complaint alleges the following claims: (1) Eighth Amendment violation under 42 U.S.C. § 1983 based on his termination from his work assignment despite his exemplary record of work for one week; (2) failure to act under 42 U.S.C. § 1983; (3) disability discrimination against the MDOC under Title II of the Americans with Disabilities Act (ADA); (4) disability discrimination against the MDOC under Sec. 504 of the Rehabilitation Act (RA); and (5) wanton and willful misconduct. (ECF No. 1, PageID.3-9.) I note first that Count V dos not state a separate cause of action but rather asserts the mental state of the Defendants; therefore, it will not be addressed as a separate cause of action. Plaintiff seeks compensatory and punitive/exemplary damages, and any appropriate relief under the ADA and RA. (ECF No. 1, PageID.9.)

**B.    Analysis**

**1.    Summary Judgment Standard**

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-

moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine

issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts

presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d

399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court

then determines "'whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so onesided that one party must prevail as a matter of

law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)

(quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 248.

### 2.      Exhaustion – Defendant Hissong

Defendants first argue that Plaintiff failed to exhaust his administrative remedies.

(ECF No. 17, PageID.67.)

The Prison Litigation Reform Act of 1995 ("PLRA") was passed in response to a

"sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83

(2006). The Act attempted to ensure that "the flood of nonmeritorious [prisoner civil rights]

claims [did] not submerge and effectively preclude consideration of the allegations with

merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). A "centerpiece" of the PLRA was the

"invigorated" exhaustion requirement, *Woodford*, 548 U.S. at 84 (quoting *Porter v. Nussle*,

534 U.S. 516, 524 (2002)), which provides that "[n]o action shall be brought with respect

to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a) (2000). Suits "brought with respect to prison conditions" include "all

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

Exhaustion of administrative remedies requires that (1) no remedies currently remain available, and (2) the remedies that had been available to the prisoner were "properly" exhausted. *Woodford*, 548 U.S. at 93. Whether the remedies were properly exhausted depends on "[c]ompliance with the prison grievance process," not any rules defined by the PLRA. *Jones*, 549 U.S. at 218. In other words, "[i]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Turning to MDOC's requirements, "[g]rievances may be submitted regarding," among other things, "alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." MDOC PD 03.02.130(E) (eff. 7/9/2007). If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

5

MDOC PD 03.02.130(R).

If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.*

The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

In the instant case, Defendants contend that although Plaintiff exhausted a grievance regarding the same termination of employment as alleged in the instant complaint, his grievance named only Food Service Direct Assad and did not mention Defendant Hissong. Defendants attach an affidavit from Carolyn Nelson, Departmental Analyst and the actual grievance reports, showing that only Assad was mentioned in the relevant grievance, ARF-19-02-0280-02a. (ECF No. 17, PageID.91-98.) Defendants further argue that Plaintiff's "grievance against Assad did not function to exhaust the administrative remedies of [Plaintiff's] claims against Hissong." (ECF No. 17, PageID.72.) Defendants conclude that Defendant Hissong should therefore be dismissed for failure to exhaust. (ECF No. 17,

PageID.73.) Plaintiff counters that his grievance identified the Food Service Director "not by name, but his title, he has satisfied the administrative exhaustion requirement." (ECF No. 19, PageID.101.) However, as Defendant notes in his reply, the grievance named Assad specifically by name and did not rely on the title of Food Service Director; since Hissong was not named in the grievance, Defendant Hissong was assigned the role of responding to the grievance. (ECF No. 21, PageID.114; ECF No. 17, PageID.97.)

Defendant is correct that a grievance exhausts administrative remedies only as to the individuals and issues named in the grievance. *See generally Ford v. Martin*, 49 F. App'x 584, 585 (6th Cir. 2002) (finding failure to exhaust when the issues in the "grievances did not raise the same issues as those asserted in the . . . complaint"); *Baldridge-El v. Gundy*, 238 F.3d 419 (6th Cir. 2000) (finding claims were properly dismissed when they were not included in the grievances the plaintiff had filed); *Pasley v. Maderi*, No. 13-13251, 2014 WL 5386914, at *4 (E.D. Mich. Sept. 15, 2014) (finding that a prisoner's grievance was properly exhausted only against those prison officials actually named the complaint, and was not exhausted as to other prison officials who the prisoner alleged in his complaint were also involved in his maltreatment).

For these reasons, I recommend finding that Plaintiff has failed to properly exhaust his administrative remedies against Defendant Hissong.

### 3.    The ADA and Rehabilitation Act Claims – Counts 3 and 4

Defendant next argues that Plaintiff has failed to state claims under the ADA Title II and RA against Defendant Hissong because Defendant Hissong is not a public entity. (ECF No. 17, PageID.73-75.) Plaintiff appears to concede that Defendant Hissong has not

been charged with violations of the ADA or RA (See ECF No. 19, PageID.102; accord, ECF No. 1, PageID.3-9) but rather argues only that the ADA and RA claims should not be dismissed against the MDOC. (ECF No. 19, PageID.102.) Defendants' reply also concludes that Plaintiff "does not contest that the ADA and RA claims against Hissong are subject to dismissal." (ECF No. 21, PageID.114.) I suggest that the parties are in agreement and are correct that the ADA and RA claims are not appropriately taken against individuals such that any claims against Defendant Hissong under the ADA or RA should be dismissed. *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Lee may not maintain an action under the ADA or the RA against the individual defendants identified in his complaint because neither the ADA nor the RA impose liability upon individuals." (citing 29 U.S.C. § 794(b) and 42 U.S.C. § 12131(1)); *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich. 2008).

### 4.    Failure to act under 42 U.S.C. § 1983 – Count 2

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate facts showing (1) the conduct about which he or she complains was committed by a person acting under color of state law and (2) the conduct deprived him or her of a federal constitutional or statutory right. In addition, a plaintiff must allege that he or she suffered a specific injury because of the conduct of a particular defendant and must allege an affirmative link between the injury and that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Defendant contends that Plaintiff's claim under this Count rests on respondeat superior or supervisory liability for the actions of others which is not actionable under §

1983. (ECF No. 17, PageID.77-78.) Plaintiff's complaint alleges that Defendant Hissong failed to act with regard to Plaintiff's grievance. (ECF No. 1, PageID.6.) Plaintiff counters that Defendant is "wrong again" because Defendant Hissong "was acting under color of state law…" (ECF No. 19, PageID.102.) Defendant replies that Plaintiff has filed to address the issue and rests on conclusory statements, which are insufficient. (ECF No. 21, PageID.115.)

Bare assertions that a defendant failed to supervise an employee, should be vicariously liable for an employee's conduct, erred in denying grievances or complaints, and/or did not sufficiently respond to the situation are insufficient to state a claim under § 1983. *See, e.g., Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)(noting "that § 1983 liability must be based on more than respondeat superior, or the right to control employees" and absolving prison officials of liability where the plaintiff failed to show, beyond his pleadings, that the defendant officials did more than "the den[y] administrative grievances or [ ] fail[ ] to act"). Accordingly, I suggest that this claim should also be dismissed.

### 5. Official capacity claims/Eleventh Amendment

Defendant contends that the Eleventh Amendment prevents suits against state agents and their officials sued in their official capacities; therefore, Plaintiff's claims under § 1983 against the MDOC and Hissong in his official capacity should be dismissed. (ECF No. 17, PageID.78-80.) Plaintiff responds that the ADA and RA abrogate Eleventh Amendment immunity but appears to concede the issue as to § 1983. (ECF No.19,

PageID.102-03.) Defendant replies that "Defendants do not assert such immunity against the ADA or RA." (ECF No. 21, PageID.115.)

A lawsuit "against a government officer 'in his official capacity' is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785, n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, suing employees of state agencies or their political subdivisions in an official capacity is the same as suing the State of Michigan. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Here, Congress has not abrogated Eleventh Amendment immunity by statute or expressly in § 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and Michigan has not consented to suit, *Johnson v. Unknown Dellatrif*, 357 F.3d 539, 545 (6th Cir. 2004).

It is true that where a plaintiff challenges the constitutionality of a state official's action, the Eleventh Amendment does not prohibit prospective injunctive relief. *Pennhurst*, 465 U.S. at 102-03. Here, however, Plaintiff requests only pecuniary relief. Thus, I suggest that any claims under § 1983 against a defendant in his or her official capacity is barred by Eleventh Amendment immunity and should be dismissed. This analysis does not apply to Plaintiff's ADA or RA claims.

10

### C.      Conclusion

For the reasons above, I recommend that the Court **GRANT** the motion (ECF No. 17) and dismiss all claims against Defendant Hissong under § 1983 for Plaintiff's failure to exhaust (Counts 1 and 2), dismiss Count 2 (failure to act under § 1983), dismiss the ADA and RA claims against Defendant Hissong, and dismiss any official capacity claims against Defendant Hissong and the MDOC under § 1983. If this Report is adopted, the only remaining claims would be Counts 3 and 4 (ADA and RA) against Defendant MDOC only.

### III.     REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 12, 2020                                     S/ PATRICIA T. MORRIS
                                                           Patricia T. Morris
                                                           United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: August 12, 2020                                      By s/Kristen Castaneda
                                                           Case Manager

12