UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **EDWARD NEWMAN**, Plaintiff, vs. **GREGG HISSONG and MICHIGAN DEPARTMENT OF CORRECTIONS,** Defendants. | 2:19-CV-11751-TGB-PTM  **ORDER OVERRULING OBJECTIONS AND ADOPTING REPORT AND RECOMMENDATION** **(ECF NO. 56)** |

After he was fired from his prison job, Edward Newman sued the Michigan Department of Corrections and Gregg Hissong, his former supervisor, asserting that his termination violated his constitutional rights, *see* 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and state law.

Some of Newman's claims were previously dismissed on the basis of exhaustion. Defendants now ask for dismissal of his remaining claims. ECF No. 46. On February 17, 2023, Magistrate Judge Morris prepared a Report and Recommendation (ECF No. 56), recommending that the Court dismiss the remaining claims and enter judgment in favor of the Defendants, to which Newman has objected (ECF No. 57).

For the reasons explained below, Newman's objections will be overruled, and judgment will enter in favor of the defendants.

1

## I.  BACKGROUND

Edward Newman is a prisoner who suffers from a number of physical problems, including blood clots in his right leg, which inhibit his ability to walk or stand for long periods of time. Newman Dep. 13:18-15:5, ECF No. 46-4, PageID.320-21. Because of this condition, his prison doctors have granted him a "no standing detail," which means that—if he accepts work assignments in prison—he must be accommodated by being allowed not to stand. Med. Summary, ECF No. 46-2, PageID.308.

In 2013, Newman was assigned to work as a "napkin roller" in the prison cafeteria. Work Eval., ECF No. 47, PageID.364. Decisions such as these about prison work assignments are made by the Classification Director. *See generally* MDOC PD 05.01.100; *see also* Kendall Decl. ¶ 3, ECF No. 46-2, PageID.295. Shortly after Newman's assignment, Gregg Hissong, his supervisor, recommended Newman's termination from this job based on his medical needs, as the cafeteria was unable to safely accommodate his standing restriction. Work Eval., ECF No. 47, PageID.364. When a work supervisor requests that a prisoner be terminated from a work assignment, the prisoner is placed on "lay-in" status until the Classification Director decides the request. MDOC PD 05.01.100(JJ), (OO). If the Director approves the request, the prisoner is placed back into a pool until a work assignment opens up. *Id.* In this instance, the Classification Director approved Hissong's termination request. Work Eval., ECF No. 47, PageID.364.

In late January 2019, Newman was again assigned to be a "napkin roller" in the cafeteria. Newman Dep. 9:1-13, ECF No. 46-4, PageID.318; Work Eval., ECF No. 47, PageID.363. He worked at this job without issue for two days. Newman Dep. 20:20-23, ECF No. 46-4, PageID.321. On his third day of work, Hissong returned from time off and saw Newman sitting on milk crates while doing his work. *Id.* at 46:1-17, ECF No. 46-4, PageID.328. According to Newman, Hissong tried to take the crates away and asked him, "You got a detail to be able to sit down on these crates?" *Id.* Newman replied that he did and tried to show Hissong his medical papers, but Hissong refused to look at them and told him something like, "Well, I don't want to see them … You can't work in the kitchen with that." *Id.* at 18:15-22, ECF No. 46-4, PageID.321. Newman says that, at the time, there were several other prisoners working at the cafeteria in the wheelchairs, and another prisoner who also worked as a napkin roller had a walker and regularly sat down on crates to do his job. *Id.*; *see also id.* at 46:1-18, ECF No. 46-4, PageID.321, 328.

According to Newman, he continued showing up to work for a few more days but was sent away each time. *Id.* at 21:24-25:3, ECF No. 46-4, PageID.321-22. On February 5, he filed a grievance, accusing Hissong of disability discrimination and seeking reinstatement to his job. Grievance, ECF No. 17-2, PageID.97. In the meantime, on February 6, Hissong submitted a written request that Newman be terminated from the napkin roller position that stated: "Requesting termination due to

3

offender having a no standing detail," a request which the Classification Director again approved. Work Eval., ECF No. 46-2, PageID.309. Some days later, on February 14, Hissong responded to Newman's grievance, stating that sitting on milk crates was safety violation and that Newman's restrictions rendered him unqualified to work in food service. Grievance, ECF No. 17-2, PageID.98. When the warden later reviewed Newman's grievance, he denied it, agreeing with Hissong that Newman was validly terminated because he was "unable to do the job as required with his restrictions." ECF No. 17-2, PageID.96. The warden recommended that Newman "be considered for employment in food service when one of the two light duty positions open." *Id.*

As part of this case, Hissong submitted a declaration to the Court, attesting that the reason he provided on the form recommending Newman's termination—*i.e.*, that Newman had a "no standing" detail—was incorrect. Newman Decl., ECF No. 47, PageID.350. Hissong now says that he actually intended to recommend termination because Newman allegedly failed to report to his work assignment for three consecutive days. Hissong states in the declaration that when he signed the form, he failed to notice that his written request stated that the reason for the request was Newman's standing restriction. *Id.* Nonetheless, Hissong maintains that prisoners cannot safely sit in the kitchen work area, where Newman had been rolling sporks in napkins. *Id.* at PageID.348. He says he is unclear as to when the Classification Director added napkin

4

rolling to the list of jobs appropriate for prisoners with standing limitations. *Id.* at PageID.350.

After unsuccessful efforts to appeal the denial of his grievance administratively, Newman filed this lawsuit without the help of a lawyer. His complaint raised five claims: 1) a § 1983 claim against Hissong for the violation of his rights under the Eighth Amendment, 2) a § 1983 claim against Hissong for failing to respond to his grievance appropriately, 3) a claim against MDOC for the violation of his rights under Title II of the Americans with Disabilities Act (ADA), 4) a claim against MDOC under § 504 of the Rehabilitation Act of 1983, and 5) a claim against Hissong and MDOC for wanton and willful misconduct under state law. ECF No. 1. Some of these claims were dismissed in earlier stages of this case. Newman's claims under the Eighth Amendment, the ADA, and the Rehabilitation Act remain live.

The Defendants eventually moved for summary judgment on these remaining claims (ECF No. 46), and Magistrate Judge Morris temporarily stayed the case to attempt to recruit counsel for Newman. ECF No. 53. (Newman told Judge Morris that he is legally blind and had previously relied in this litigation on the help of a legal writer, who later became unavailable.) Unfortunately, the Court's efforts to recruit counsel were not successful. ECF No. 54. After the stay was lifted, Newman did not submit a response to the motion for summary judgment.

On February 17, 2023, Judge Morris prepared a Report and Recommendation, recommending that Defendants' motion be granted. ECF No. 56. Her R&R interprets the motion as a combination of a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and a motion for summary judgment under Federal Rule of Civil Procedure 56. As Judge Morris explained, these rules create different standards for the Court to apply in considering requests for dismissal. Under Rule 12(b)(6), which governs motions to dismiss, a Court's review is limited to allegations within the pleadings; the Court considers whether the allegations, if true, state a plausible, legally cognizable claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Under Rule 56, meanwhile, which covers summary judgment motions, the Court considers the parties' evidence and decides whether, if that evidence is viewed in the light most favorable to the non-moving party (in this case Newman), that evidence would prove an entitlement to relief. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The R&R concluded that the allegations in Newman's complaint were insufficient to allege a claim under the Eighth Amendment against Hissong. The R&R reasoned that, even if Hissong's termination of Newman was unjustified, it was not "cruel" or "unusual" within the meaning of the United States Constitution because a prison job is not a basic necessity of human existence. ECF No. 56, PageID.510. As to

Newman's claims under the ADA and the Rehabilitation Act, the R&R noted that MDOC could not be held liable under those statutes based on a theory of supervisory liability. To prevail, Newman therefore needed evidence that Defendants violated his rights through policy or custom—or that a prison official's actions themselves rose to the level of an official policy because the official had final policy-making authority. *Id.* at PageID.412. Because Newman had no such evidence, his claim failed, and judgment in the Defendants' favor was appropriate.

As stated above, Newman never responded to Defendants' motion for summary judgment, so the position set out in the Defendants' motion is technically unopposed. Nevertheless, still representing himself, Newman filed two objections to Judge Morris's recommendation (ECF No. 57), to which Defendants have responded (ECF No. 58).

## II. LEGAL STANDARD

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite the specific portion of the report and recommendation to which they pertain.

This Court must review de novo (as if it were considering the issues for the first time) the parts of a report and recommendation to which a party objects. See 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge … or receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### III. ANALYSIS

*A. Objection One*

Newman's first objection focuses on the R&R's treatment of his Eighth Amendment claim. Urging that Hissong committed perjury in claiming that he fired Newman for not showing up to work for three days, Newman disagrees with Judge Morris's conclusion that wrongful termination from a prison job cannot amount to "cruel" and "unusual" punishment under the Eighth Amendment. ECF No. 57, PageID.422-25.

The Court acknowledges that the record provides reasons to doubt the truth of the statements in Hissong's declaration. For example, as Newman rightly points out, the response that Hissong filed to Newman's grievance concerning his firing actually doubles down on the statement that the reason for Newman's termination was the cafeteria's inability to accommodate prisoners with standing restrictions.

Nonetheless, as Defendants note, the inconsistencies in Hissong's statements did not factor into the R&R's ultimate conclusion that Newman cannot proceed on a claim for the violation of his rights under the Eighth Amendment. The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981)). It is concerned with "deprivations

8

of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. The deprivation asserted must result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 347.

As the R&R correctly explained, the type of conduct Newman asserts occurred here, termination from a prison job—even for possibly bogus reasons—does not rise to the level of an Eighth Amendment violation. *See McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001) (placing medical restrictions on prisoner which precluded particular job assignments did not violate the Eighth Amendment). As the Sixth Circuit has explained, "forcing an inmate to live without such privileges as … a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim." *Smith v. Sapp*, 156 F.3d 1232 (Table), 1998 WL 384620, at *1 (6th Cir. 1998). And there is no constitutional right to prison employment or a particular prison job. *McKinley*, 8 F. App'x at 492. The wrong Newman alleges is not one for which the Eighth Amendment provides a remedy.

Objection One will therefore be **OVERRULED**.

### B. Objection Two

Newman also disagrees with the R&R's treatment of his ADA and Rehabilitation Act claims. ECF No. 57, PageID.427-28. He maintains that Hissong knowingly discriminated against him because of his disability by failing to accommodate and then firing him, and that MDOC

9

sanctioned these discriminatory acts by thwarting Newman's efforts to appeal his termination. *Id.* He asserts there is evidence, in the form of an admission by Hissong, that the napkin roller job was intended to accommodate prisoners with standing limitations.

Title II of the ADA provides, in relevant part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has made clear that its protections do not stop at the walls of a state prison. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998); *see also United States v. Georgia*, 546 U.S. 151, 159 (2006) ("Title II validly abrogates state sovereign immunity.").

Apart from a few additional requirements that are not relevant here, claims brought under Section 504 of the Rehabilitation Act are functionally identical to claims brought under Title II claim. 29 U.S.C. § 794(a); *see Babcock v. Michigan*, 812 F.3d 531, 540 (6th Cir. 2016) (explaining that "analysis of Rehabilitation Act claims roughly parallels ADA claims because the statutes contain similar language are quire similar in purpose and scope" (internal quotations omitted)).

To sustain a claim under either of these statutes, a plaintiff must establish three elements: (1) that he has a disability; (2) that he is otherwise qualified to receive the benefit or service at issue; and (3) that he is being excluded from participation in, being denied the benefits of,

or being subjected to discrimination under the program because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

As Judge Morris noted, "neither the ADA nor the RA impose liability upon individuals," so Newman needs some way to attribute Hissong's actions to the MDOC and its policies. *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004). Hissong's declaration does admit that, at some point "classification added silverware wrapping as a detail to accommodate prisoners with limitations," which suggests that Hissong would have been wrong to terminate Newman because of his "no standing detail." ECF No. 47, PageID.350. Viewed in the light most favorable to Newman, this admission might establish individual liability for violating Newman's ADA or RA rights.

But as the R&R correctly explained, MDOC cannot be held liable under the ADA or the Rehabilitation Act under a theory of supervisory liability—that is, MDOC as an agency cannot be held liable as the supervisor for its employees who may commit a violation. *Jones v. City of Detroit*, 20 F.4th 1117, 1122 (6th Cir. 2021). Newman lacks evidence that MDOC has a practice or policy of discriminating against prisoners in matters of employment on the basis of disability. One isolated instance of alleged discrimination does not amount to a "practice." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). And the prison warden's denial of Newman's grievance is not enough to prove a policy because the warden does not have final policy-making authority in matters relating

11

to hiring and firing from prison jobs; under Michigan law, that falls within the purview of MDOC's Director. MCL § 791.206.

Objection Two will therefore be **OVERRULED**.

### IV. CONCLUSION

For the above reasons, Newman's objections to Judge Morris's Report and Recommendation (ECF No. 57) are **OVERRULED**. The Court **ACCEPTS AND ADOPTS** the Report and Recommendation (ECF No. 56) as the opinion of the Court. Defendants' Motion for Summary Judgment is **GRANTED**, and judgment shall enter against Newman in favor of Hissong and MDOC.

DATED this 31st day of March, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge